UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEITH BRACHT, )
)
    Plaintiff, )
)
v. ) No. 4:04CV1286 HEA
)
IGOR GRUSHEWSKY, et al., )
)
    Defendants. )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Monnye Gross' Motion to Dismiss for Lack of Subject Matter Jurisdiction, [#40]. Plaintiff has responded to the motion. For the reasons set forth below, Defendant Gross' motion is denied.

### Facts and Background[1]

Plaintiff, Keith Bracht, brings this action against Defendants Igor Grushewsky, Monnye Gross, and Macala Yam based on various contract claims surrounding the failure to deliver an airplane which Defendant Grushewsky allegedly sold to Plaintiff. Defendant Moynne Gross was Grushewsky's attorney, who not only incorporated Grushewsky's business, Yakovlev Centers of America, Inc. ("YCA") but also became an investor in the corporation, subscribing to a 49% ownership interest in the corporation in exchange for

---

[1] The recitation of facts is taken from the parties' pleadings and is set forth for the purposes of this Order only. The recitation in no way relieves the parties of any proof thereof in future proceedings.

financing and legal services to Grushewsky and YCA.

On May 15, 2001, Plaintiff and Grushewsky entered into a sales agreement wherein Plaintiff agreed to purchase and Grushewsky agreed to sell a Russian aircraft, known as a "Smolensk YAK 18T." The purchase price for the aircraft was $80,000. Defendant Gross was present and assisted in the preparation of the sales agreement. Pursuant to the agreement, Plaintiff made a deposit for the aircraft in the amount of $40,000. Grushewsky also solicited additional funds from Plaintiff for parts and "progress payments," and by December, 2001, Plaintiff had contributed a total of $58,460.00 toward the purchase of the aircraft.

After disagreements over the progress of refurbishing the aircraft per the sales agreement, Grushewsky unilaterally repudiated the agreement, refused to deliver the aircraft under any terms, and informed Plaintiff that YCA would promptly refund the $58,460.00 once a termination of the sales agreement was executed by Plaintiff. On April 21, 2002, Plaintiff executed and returned the Termination of Sales Agreement that Grushewsky, already having executed, had sent him. Grushewsky executed and delivered to Plaintiff an unconditional Promissory Note in which the YCA promised to repay Plaintiff $58,460.00, plus 10% annual interest, on or by May 24, 2002. The promissory note also provided that Plaintiff was entitled to his attorney's fees and expenses if he was required to enforce it in a court of law.

On May 25, 2002, Grushewsky delivered Plaintiff a check in the amount of $64,306.00, which was represented to be payment in full on the YCA Defendants' debt of

$58,460 plus 10% interest, but when Plaintiff attempted to cash the check, it did not clear due to insufficient funds. Subsequently, Plaintiff made demands that YCA repay the monies owed, or to perform under the sales agreement and deliver the Smolensk YAK 18T aircraft in fully operational, FAA-certified condition. Plaintiff has not been repaid, nor has the aircraft in question ever been delivered.

On April 12, 2005, Plaintiff filed his First Amended Complaint against Defendants asserting alter ego (Count I), breach of sales agreement (Count II), breach of promissary note and bad check (Count III), fraudulent inducement into termination of sales agreement (Count IV), common law fraud (Count V), violations of the Missouri Merchandising Practices Act (Count VI), partnership - all Defendants (Count VII), partnership - Monnye Gross (Count VIII), partnership by estoppel - Monnye Gross (Count IX), joint adventurers - all YCA Defendants (Count X), conspiracy - all Defendants (Count XI), agency - Yakovlev Center of America (Count XII), reformation (Count XIII), and breach of settlement agreement (Count XIV). Plaintiff seeks an award of damages in excess of $75,000, punitive damages, pre- and post-judgment interest, and costs of suit, including but not limited to attorney's fees and expenses.

Defendant Gross now moves to dismiss the amended and original Counts against her (Count I and Counts IV through XIII) for lack of subject matter jurisdiction. Defendant Gross argues that the claims before this Court are claims which were the subject of litigation in the Circuit Court for St. Louis County, Missouri and are, therefore, precluded from being pursued in this Court by the *Rooker-Feldman* doctrine.

The state litigation was filed in 2002 by two plaintiffs who claimed that Grushewsky, Gross, YCA, Inc., and others took deposits from them toward the purchase of an aircraft which was never delivered. Plaintiff subsequently filed an intervening claim that he, too, had made a deposit on a plane that defendants failed to deliver. The state court conducted a hearing in April 2004 on a motion filed by Defendant Gross to dismiss Plaintiff Bracht's First Amended Complaint, which resulted in an Order dismissing seven out of eleven of Plaintiff's claims against Defendant Gross. The claims dismissed were claims for alter ego, breach of sales agreement, breach of promissory note and bad check, common law fraud, partnership--all YCA defendants, partnership--Monnye Gross, and partnership by estoppel--Monnye Gross. Defendant's motion was overruled as to Plaintiff's claim for fraudulent inducement into the termination of the sales agreement and for violations of the Missouri Merchandising Practices Act. Two other counts, a claim for joint adventurers and a claim for conspiracy also remained viable against Gross.

Plaintiff was then given the opportunity to amend, and the state court heard arguments in May, 2004 with regard to Plaintiff's motion for leave to file his Second Amended Petition. As Defendant Gross claims in her instant motion, the state court judge found the claims in Plaintiff's Second Amended Petition to be indistinguishable from those in his First Amended Petition and denied Plaintiff leave to file it. Plaintiff then voluntarily dismissed his case in state court without prejudice and filed a cause of action in this Court.[2]

---

[2]Plaintiff filed no appeals of the orders entered against him in state court.

Plaintiff's federal Complaint contains many of the same claims against Defendant Gross which were dismissed in the state court action, i.e., alter ego, common law fraud, partnership--all YCA defendants, partnership--Monnye Gross, and partnership by estoppel--Monnye Gross. Defendant Gross claims the state court's judgment as to the dismissed counts was final, and Plaintiff is precluded under the *Rooker-Feldman* doctrine from bringing those claims in federal court.

## Discussion

The *Rooker-Feldman* doctrine provides that, with the exception of petitions for habeas corpus relief, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. *Gisslen v. City of Crystal, Minn.,* 345 F.3d 624, 627 (8th Cir. 2003) (*citing Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir. 2000); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *and Rooker v. Fidelity Trust Co,* 263 U.S. 413, 416 (1923)). "District courts have no authority to review state court decisions, 'even if those challenges allege that the state court's action was unconstitutional,' *Id.* (*citing Feldman,* 460 U.S. at 486), because 'federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court.'" *Id.* (*citing Lemonds,* 222 F.3d at 492).

"The *Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions." *Lemonds,* 222 F.3d at 492. A corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over claims that are "inextricably intertwined"

with specific claims already adjudicated in state court. *Id.* at 492-93 (*citing Feldman,* 460 U.S. at 482 n. 16; *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1034 (8th Cir. 1999); *and Neal v. Wilson,* 112 F.3d 351, 356 (8th Cir. 1997)). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Id.* at 493 (*citing Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1 (1987) (Marshall, J. concurring). "[W]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceedings as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.*

In deciding whether the *Rooker-Feldman* doctrine controls this case, the Court must determine "exactly what the state court held" to ascertain whether granting the requested relief would either void the state court's judgment or effectively amount to a reversal of its holding. *Id.* (*citing Charchenko v. City of Stillwater,* 47 F.3d 981, 982-83 (8th Cir. 1995)). "If the relief requested in the federal action requires determining that the state court decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit." *Charchenko,* 47 F.3d at 983.[3]

The United States Supreme Court carefully re-examined the *Rooker-Feldman* doctrine this past term in *Exxon v. Saudi Basic Industries,* --- U.S. ---, 125 S.Ct. 1517, 161 L.Ed.2d

---

[3]In *Charchenko,* the Eighth Circuit noted that *Rooker-Feldman* is broader than claim and issue preclusion since it does not depend on a final judgment on the merits. Aside from this distinction, the doctrines are extremely similar. *Id.* at 983 n. 1.

454 (2005). In *Exxon*, the Court began by stating the following:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Id.* at 1521-22.

The *Exxon* Court noted that both *Rooker* and *Feldman* exhibit the limited circumstance in which the Supreme Court's appellate jurisdiction over state-court judgments, as established by 28 U.S.C. § 1257, precludes a district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, e.g., § 1330 (suits against a foreign states), § 1331 (federal question), and § 1332 (diversity). *Exxon,* 125 S.Ct. at 1526. In both *Rooker* and *Feldman*, however, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. *Id.* Plaintiffs in those cases called upon the district court to overturn an injurious state-court judgment. *Id.* Yet, because § 1257 vests authority to review a state court's judgment solely in the Supreme Court, the district courts in those cases lacked subject-matter jurisdiction. *Id.* (*citing Verison Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 636, 644, n. 3 (2002)).

The issue before the *Exxon* Court was whether *Rooker-Feldman* applied to parallel

state and federal litigation. The Court concluded that the doctrine did not deprive a district court of jurisdiction since the federal court action was commenced as a protective matter and not in an attempt to overturn any judgment entered by the state court. *Id.* at 1526. The Court held that the disposition of a federal action, once the state-court adjudication is complete, would be governed by considerations of preclusion. *Id.* at 1527. "The Full Faith and Credit Act, 28 U.S.C. § 1738, originally enacted in 1790, ch. 11, 1 Stat. 122, requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" *Id.* (*citing Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523 (1986); *accord Matsushita Elec. Industrial Co. v. Epstein,* 516 U.S. 367, 373 (1996); *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380-381 (1985)). "Preclusion," the Court stated, "is not a jurisdictional matter." *Id.* (*citing* Fed. R. Civ. P. 8(c) which lists *res judicata* as an affirmative defense). A federal court may be bound to recognize the claim and issue preclusive effects of a state court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court. *Id.*

The Court extended this rule to apply to matters *previously* litigated in state court. The Court noted:

> Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter ***previously litigated in state court***. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Id.* (*quoting GASH Assoc. v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993); *accord Noel v. Hall,* 341 F.3d 1148, 1163-1164 (9th Cir. 2003) (emphasis added)). Thus, where the federal plaintiff does not complain of a legal injury caused by a state court judgment, but rather of a legal injury caused by an adverse party, *Rooker-Feldman* does not bar jurisdiction. *See Noel v. Hall,* 341 F.3d at 1163. If the federal plaintiff and the adverse party have already litigated the state court suit to judgment, the federal plaintiff may be precluded from relitigating that dispute under the interjurisdictional preclusion rule of the Full Faith and Credit Act, 28 U.S.C. § 1738. *Id.* "[B]oth [*Rooker-Feldman* and preclusion] define the respect one court owes to an earlier judgment. But the two are not coextensive. Preclusion in federal litigation following a judgment in state court depends on the Full Faith and Credit Statute, . . . which requires the federal court to give the judgment the same effect as the rendering state would . . . The *Rooker-Feldman* doctrine, by contrast, has nothing to do with § 1738." *Id.* at 1164 (*citing GASH Assoc.,* 995 F.2d at 728-29). *Rooker-Feldman* bars a plaintiff from bringing a suit to remedy an injury inflicted by the state court's decision. Preclusion, on the other hand, applies when a federal plaintiff complains of an injury that was not caused by the state court, but which the state court has previously failed to rectify. *Id.* at 1165 (*citing Jensen v. Foley,* 295 F.3d 745, 747-48 (7th Cir. 2002)).

In this case, Plaintiff Bracht seeks to litigate claims that were dismissed in the state court action. He has not, however, alleged an injury caused by the state court decision nor does he specifically seek relief from the state court judgment in this federal Complaint. As

such, under *Exxon*, the *Rooker-Feldman* doctrine does not divest this Court of subject matter jurisdiction. Although the Court has subject matter jurisdiction, Plaintiff's attempts to circumvent the effect of the state court order dismissing his claims must be addressed in terms of claim and issue preclusion, matters which have, at this point, not been raised.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Monnye Gross' Motion to Dismiss for Lack of Subject Matter Jurisdiction, [#40] is denied.

Dated this 14th day of September, 2005.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT COURT