UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH BRACHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:04CV1286 HEA |
| | ) |
| IGOR GRUSHEWSKY, et al., | ) |
| | ) |
| Defendants. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on defendant Monnye Gross' Motion for Summary Judgment, [Doc. #57]. The issues have been fully briefed by plaintiff and defendant Gross. For the reasons set forth below, the motion is granted.

## **Introduction**

Plaintiff, Keith Bracht, brought this action against defendants Igor Grushewsky, Yakovlev Centers of America, (YCA), Monnye Gross, and Macala Yam[1] based on various contract claims surrounding the failure to deliver an airplane which was allegedly sold to Plaintiff. On April 12, 2005, plaintiff filed his First Amended Complaint asserting the following claims against defendant Gross: alter

---

[1] Plaintiff dismissed defendant Yam from this action on August 8, 2006.

ego (Count I)[2], fraudulent inducement into termination of sales agreement (Count IV), common law fraud (Count V), violations of the Missouri Merchandising Practices Act (Count VI), partnership - all defendants (Count VII), partnership - Monnye Gross (Count VIII), partnership by estoppel - Monnye Gross (Count IX), joint adventurers - all defendants (Count X), conspiracy - all defendants (Count XI), agency - Yakovlev Center of America (Count XII)[3], reformation (Count XIII), and breach of settlement agreement (Count XIV).  Plaintiff seeks an award of damages in excess of $75,000, punitive damages, pre- and post-judgment interest, and costs of suit, including but not limited to attorney's fees and expenses.

## Facts and Background

Defendant Grushewshy and Gross met sometime in 1999.  In June, 2000, Grushewsky contacted Gross by telephone and stated that he needed to see her as

---

[2] Plaintiff refers to his request to pierce the corporate veil as an alter ego "claim." However, piercing the corporate veil under an alter ego theory is best thought of as a remedy to enforce a substantive right, and not as an independent cause of action. *See Grothues v. Internal Revenue Serv. (In re Grothues),* 226 F.3d 334, 337-38 (5th Cir.2000). This distinction notwithstanding, the Court will use the parties' proffered terminology in referring to plaintiff's alter ego "claim."  See *Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822, 826 (8th Cir. 2006).

[3] Plaintiff does not specifically name Gross in the caption of Count XII, nor does he specifically seek recovery against Gross in Count XII.  He does, however refer to Gross within the body of Count XII and seeks recovery against the YCA "defendants."  As such, the Court assumes that plaintiff brings this claim against defendant Gross, as well as the other defendants named in this Count.

soon as possible. Grushewsky came to Gross' office the following Monday and told her that he wanted to set up a partnership or a company and that he wanted to import and sell YAKs, which are Russian airplanes. Grushewsky explained to Gross that he was not happy with his "partner" because his "partner" wasn't putting up enough money and that he was in a hurry. Gross inquired about the YAKs and became interested in what Grushewsky had to say about the airplanes. After their meeting, Gross went to the library to research the YAK airplane.

Yakovlev Center of America, Inc., (YCA) was incorporated in June, 2000. At the request of Grushewsky, Gross or a clerk in her office prepared the papers to incorporate YCA.

Between June, 2000 and June 15, 2001, Gross loaned Grushewsky and YCA approximately $271,100. In exchange for these loans, she took a security interest in the assets of YCA to the extent of $180,100 of Gross' investments.

In approximately April, 2001, plaintiff called Grushewsky in response to an internet search regarding a YAK 18T Russian airplane. Grushewsky identified himself as the President of YCA. During the conversation, plaintiff advised that he was interested in purchasing a YAK 18T. Grushewsky told him that he could import one for him.

Plaintiff traveled to St. Louis on May 15, 2001 to meet with Grushewsky

about purchasing a YAK 18T. At this time, plaintiff inspected and flew the airplane. Immediately after the test flight, the terms of a Sales Agreement were negotiated between plaintiff and Grushewsky. They reached an agreement as to price and modifications and that there would be a down payment. Later, in Grushewsky's office, Grushewsky pulled up a draft of a Sales Agreement on his computer that had been previously sent as a sample to plaintiff. Although plaintiff never heard Grushewsky call Gross, during the meeting on May 15, 2001, Gross came to Grushewsky's office at the airport hanger to notarize a document. Grushewsky introduced Gross as his friend, who is an attorney who helps him.

Grushewsky was typing slowly on the computer and Gross offered to type the Sales Agreement. Plaintiff and Grushewsky stood over her shoulder as she typed. After about half way through the typing of the Sales Agreement, Gross said the plane was registered with the FAA in Grushewsky's name and thus the contract should have his name in it. The FAA registration for this airplane lists the owner as: DBA: Igor Grushewsky.

Plaintiff entered into the Sales Agreement wherein Plaintiff agreed to purchase a Russian aircraft, known as a "Smolensk YAK 18T." The purchase price for the aircraft was $80,000. The Sales Agreement provides: [t]his Sales Agreement

for the sale of an airplane is made and effective on this 15th day of August 2001, by and between KEITH A. BRACHT, of 12867 South Wildwood Lane, Anacortes, Washington 98221, (hereinafter, "Buyer"), and IGOR GRUSHEWSKY, of 641 D. Coeur De Royale, St. Louis, Missouri 63141, (hereinafter "Seller").

Pursuant to the agreement, Plaintiff issued two checks made payable to Igor Grushewsky in the total amount of $40,000. The airplane was to be delivered to plaintiff on August 2, 2001.

After the meeting in May, 2001, plaintiff had contact with Grushewsky and a person by the name of "Butch," who was supposed to be working on the airplane on a semi-weekly basis. In June and July, 2001, plaintiff learned from Butch that no work had been completed on the airplane. Plaintiff continued to follow up with Grushewsky and Butch about the progress on the airplane.

In August, 2001, plaintiff issued another check payable to Grushewsky in the amount of $7,000. On December 3, 2001, plaintiff issued a check in the name of Yakovlev Center of America in the amount of $3,460 for specific additional components. A check payable to Grushewsky was issued by plaintiff on December 13, 2001 in the amount of $8,000 because Grushewsky requested additional monies from plaintiff. At this point, plaintiff had contributed a total of $58,460.00 toward

the purchase of the aircraft.

Grushewsky contacted plaintiff in April, 2002 and told him that he could not complete the airplane to plaintiff's standards and would send him an agreement terminating the Sales Agreement. Grushewsky represented that he had monies to pay to plaintiff. On April 21, 2002, plaintiff and Grushewsky executed a document entitled "Termination of Sales Agreement. Pursuant to the Termination Agreement, plaintiff was to receive all the monies paid. Plaintiff never received any money back.

Grushewsky executed a Promissory Note dated May 17, 2002 and sent it to plaintiff. This note provided:

> I, Igor Grushewsky will pay back to Keith A. Bracht the all [sic] amount he paid for Aircraft Yak 18T, plus interest in amount of 10%. Total Payment shell [sic] be maid [sic] by May 24 [sic] 2002. This note is binding on Igor Grushewsky and his heirs. The holder of this note has the right to collect the principal, interest, and to recover all legal costs in a court of Missouri.
>
>         Signed: _____    Date: 05/17/2002
>            Igor Grushewsky
>
>         Yakovlev Center of America
>         3127 Creve Couer [sic] Mill Road
>         Creve Couer [sic] Airport Hanger N-3
>         St. Louis, MO 63146
>         Tel 314-514-1730

Cell 314-3937697

On May 25, 2002, Grushewsky issued a check form his personal account to plaintiff in the amount of $64,306. There were insufficient funds to pay the check.

After meeting Gross in May, 2001, plaintiff had no communication with Gross until May 14, 2002, when he and/or his wife, left a voice mail message for her in an attempt to get in contact with Grushewsky. Plaintiff recalls only one telephone conversation with Gross in June, 2002 after having met her in May, 2001.

Plaintiff believed Grushewsky was acting on behalf of YCA when the Sales Agreement was signed.

In exchange for 49% stock interest in YCA, Gross paid $125,000 to YCA. She never authorized Grushewsky to act on behalf of herself, individually in relation to anything. Gross never received any monies from Grushewsky in repayment of the loans she made to him and YCA.

Gross was never an officer or a board member of YCA. She was never a signatory on any YCA accounts.

## **Summary Judgment Standard**

Summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *Tamko Roofing,* 450 F.3d at 829. The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).

In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving

party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## Discussion

The Court applies Missouri substantive law in this diversity case. *Freeman v. State Farm Mut. Auto. Ins. Co.,* 436 F.3d 1033, 1034-35 (8th Cir.2006). Plaintiff does not dispute most of defendant's discussion of the applicable Missouri law, rather, he asserts throughout that the facts of this matter under Missouri law preclude summary judgment.

### Count I-Alter Ego

In some circumstances, a court may disregard a corporate entity and hold its owners personally liable for the corporation's debts. *66, Inc. v. Crestwood Commons Redevelopment Corp.,* 998 S.W.2d 32, 40 (Mo. banc 1999). In order to

"pierce the corporate veil," under an "alter ego" theory, a plaintiff must first show control-not mere majority or stock control, but complete domination, not only of finances, but of policy and business practice with respect to the transaction, such that the corporate entity had no separate mind, will or existence of its own. *Id.* Stated another way, a plaintiff must show that the corporation is the *alter ego* of the defendant. *Id.* at 41. "When a corporation is so dominated by a person as to be a mere instrument of that person, and indistinct from the person controlling it, the court will disregard the corporate form if its retention would result in injustice. *Saidawi v. Giovanni's Little Place, Inc.,* 987 S.W.2d 501, 504-05 (Mo.App. E.D.1999)." *Mobius Management Systems, Inc. v. West Physician Search, L.L.C.*, 175 S.W.3d 186, 188 (Mo.App. E.D.,2005).

In order to utilize this theory of recovery, however, there must be a corporate "veil" to pierce. Under this theory, the corporation itself is the mere instrumentality of the individual owners, and therefore they can be found liable. This scenario is not present in the matter before the Court because the Sales Agreement was not entered into by the corporate entity YCA.

Plaintiff argues that the evidence establishes that Grushewsky acted interchangeably in the capacity of president of YCA and individually. Plaintiff

inexplicably uses parol evidence in an attempt to create an ambiguity in the Sales Agreement in an effort to use additional parol evidence to explain that Grushewsky's signature on the Sales Agreement really meant that he was signing the Agreement in his capacity as president for YCA. Such use of parol evidence is improper in analyzing contracts. This Court cannot, absent any ambiguity in the terms of the contract itself, consider parol evidence.

The parol evidence rule is a rule of law, and not merely a rule of evidence. *Brewer v. Devore,* 960 S.W.2d 519, 522 (Mo.App. S.D.1998). The parol evidence rule bars the use of extrinsic evidence unless the instrument to be interpreted is ambiguous. *Royal Banks of Mo. v. Fridkin,* 819 S.W.2d 359, 361 (Mo. banc 1991). Whether a document is ambiguous is a question of law. *Id.*; *Emerald Pointe, L.L.C. v. Jonak* 2006 WL 2244415, at *4 (Mo.App. S.D.,2006). See also, *Union Elec. Co. V. Consolidation Coal Co.*, 188 f.3d 998, 1002 (8th Cir. 1999)(applying Missouri law); *Jamieson-Chippewa Inv. Co., Inc. V. McClintock*, 996 S.W.2d 84, 89 (Mo. App. 1999)(the parol evidence rule "*prohibits* parole evidence offered to vary, alter, add to or subtract from the terms of a contract when the contract is *not* ambiguous." (Emphasis in original).

The Sales Agreement clearly establishes that it was entered into between

Keith Bracht and Igor Grushewsky. There is nothing ambiguous about the terms of the Agreement nor the parties thereto. Indeed, under plaintiff's position, *i,e,*, that the contract is between plaintiff and the corporation, YCA, an entirely separate myriad of issues would obviously exist in that *Grushewsky* himself is the registered owner of the airplane. The corporation could not have entered into a Sales Agreement for the sale of an airplane it did not own.[4]

Pursuant to the terms of the written Sales Agreement[5], the parties agreed that plaintiff would purchase and Grushewsky would sell the airplane. No ambiguity exists and none will be created. Thus, there is no corporate entity to the agreement and therefore, there is no corporate veil to pierce. As such, Gross cannot be found to be personally liable for a non-existent debt of YCA. Gross is entitled to judgment as a matter of law on Count I.[6]

Count IV-Fraudulent Inducement into Termination of Sale Agreement;

---

[4] Plaintiff attempts to place some significance to the fact that the FAA registration for the airplane lists Grushewsky under the designation of "doing business as" Igor Grushewsky. This designation does nothing to effect the registered owner of the plane being Grushewsky himself.

[5] This discussion presumes the continued existence of the Sales Agreement. Query whether, in light of the Termination Agreement that the parties executed, the Sales Agreement should even be considered in this summary judgment analysis. Because plaintiff has alleged that fraudulent inducement in the execution of the Termination Agreement, the Court has considered the arguments as they relate to the Sales Agreement.

[6] Although plaintiff takes issue with Gross' use of the terminology "judgment as a matter of law," this language is taken from Rule 56 which details the circumstances under which a party is entitled summary judgment.

Count V-Common Law Fraud; and
Count VII-Violations of the Missouri Merchandising Practices Act

Plaintiff's argument with regard to these counts hinges entirely on the finding that "the corporate veil has been pierced with regard to the entire Bracht transaction. Plaintiff's theory, however, cannot support these Counts. Plaintiff's claims that the representations of the corporation through Grushewsky and/or of Grushewsky are attributable to Gross does not withstand the Court's analysis of the facts as detailed *supra*.

Plaintiff accepts Gross' rendition of Missouri's law on fraudulent inducement. Under Missouri law, in order to state a claim for fraud in the inducement relating to the Termination of Sale Agreement, plaintiff must establish facts in support of <u>each</u> of the following elements: (1) that she made certain material representations to plaintiff; (2) such representations were false when made; (3) that she knew the representations were false; (4) that the representations were made with the purpose of deceiving plaintiff; (5) that plaintiff was, in fact, deceived; (6) plaintiff reasonably relied on the representations in signing the Termination of Sale Agreement; and (7) plaintiff suffered damage as a proximate result of the fraudulent misrepresentations. *Trotter's Corp. V. Ringleader Restaurants, Inc.*, 929 S.W.2d 935, 939 (1996).

In order for Gross to be found liable for fraud in the inducement of the Sales

Agreement and common law fraud, she herself must have made false representations to plaintiff upon which he relied. There is no evidence of any such representations. In fact, the only evidence presented establishes that Gross made no false representation whatsoever to plaintiff subsequent to the execution of the Sales Agreement. As there are no genuine issues of material fact regarding Count IV, Gross is entitled to summary judgment.

With respect to Count V, common law fraud, Plaintiff again accepts defendant's rendition of Missouri's general law on common law fraud. Under Missouri law, plaintiff must prove (1) a representation by Gross; (2) its falsity; (3) its materiality; (4) Gross' knowledge of the falsity or ignorance of the truth; (5) Gross' intent that her representation should be acted upon by plaintiff and in the manner reasonably contemplated; (6) plaintiff's ignorance of the falsity of the representation; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely thereon; and (9) plaintiff's consequent and proximately caused injury. *State ex rel. PaineWebber v. Voorhees*, 891 S.W.2d 126, 128 (Mo. banc. 1995); *Manzer v. Sanchez*, 985 S.W.2d 939, 940 (Mo.App. 1999); *Stavrides v. Zerjav*, 848 S.W.2d 523, 528 (Mo.App. 1993).

Similar to the analysis regarding fraudulent inducement, in order for Gross to be liable under this theory of recovery, plaintiff must establish, among other things,

that Gross herself made an untrue representation upon which he relied. The record is completely devoid of any false representations made by Gross to plaintiff upon which he relied. Summary judgment as to Count V is therefore appropriate.

Section 407.025.1 of the Missouri Merchandising Practices Act allows any person who purchases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property as a result of the use or employment by another person of a method, act or practice declared unlawfully by section 407.020 to bring a private civil action against the seller. The salient question therefore is whether defendant Gross is the "seller" of the airplane.

The record establishes that Gross was not the seller of the plane; plaintiff may not rely on his piercing the corporate veil theory to impute liability under the Missouri Merchandising Act onto Gross because the Sales Agreement establishes that Grushewsky was the seller. As previously noted, any other "seller" would render the Sales Agreement void because Grushewsky himself was the only and therefore only he could sell the plane. Gross is therefore entitled to judgment as a matter of law on Count VI.

## Counts VII, VIII and XI-Alleged Partnerships

Nowhere in the record is there any evidence to support a claim against Gross as a partner with Grushewsky. As Gross correctly urges, the very existence of the

corpoation negates the existence of any partnership. The record establishes that the corporation, YCA was incorporated in June 2000. Gross was a 49% shareholder of the corporation. Plaintiff consistently argues that he thought he was dealing with YCA, a corporation. In a desperate attempt to hold Gross liable, plaintiff argues that Gross should be found to be in a partnership by estoppel with Grushewsky. This theory is not supported in any way by the facts.

Section 358,160 Mo.Rev.Stat. provides, in pertinent part:

> When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented to its being made in a public manner he is liable to such person, whether the representation has ro has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

None of the above representations were made by Gross at any stage of any transaction in this case. As such Gross is entitled to summary judgment on Counts VII, VIII and IX.

### Count X-Joint Adventurers

Likewise, because YCA is a corporation, and the parties involved intended to create a corporation, there is no "joint venture" between Gross, Grushewsky and

anyone else. The owner of the airplane to be sold was Grushewsky. Plaintiff points to no facts in the record which controvert the existence of the corporation, the ownership of the airplane or any agreement between Gross and Grushewsky to enter into a joint venture regarding the single transaction of selling the airplane. Plaintiff's claim of a joint venture is totally unfounded and Gross is therefore entitled to judgment.

## Count XI-Conspiracy

Under Missouri law, to state a claim for civil conspiracy, plaintiff must establish, with facts, the following necessary elements: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) plaintiff was thereby damaged. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996).

Plaintiff argues that the record establishes that both Gross and Grushewsky were aware of the financial problems of YCA and nonetheless continued to sell planes to new customers and that Gross kept drafting contracts for sale of new YCA planes to customers even though she knew of the problems current customers were having. Furthermore, plaintiff argues that Gross was specifically made aware of the Bracht's problem in her May, 2002 conversation with plaintiff and she failed to follow up to ensure the Bacht's problem was taken care of. As Gross correctly

argues, awareness of financial problems does not tend to show a meeting of the minds to defraud. Gross' awareness of a problem and her not following up on the problem does not show a meeting of the minds to defraud. Drafting legal documents in spite of an awareness of a corporation's financial problems does not demonstrate a meeting of the minds to defraud. While the Court is cognizant of plaintiff's frustration with the factual scenario to this entire transactions, there is simply no evidence in this record to support a claim for civil conspiracy in that there is no evidence that Gross and Grushewsky conspired to do anything, much less do anything with an illegal or wrongful purpose. "There can be no cause of action for conspiracy in the absence of an underlying wrongful act or tort." *Williams v. Mercantile Bank of St. Louis*, 845 S.W.2d 78, 85 (Mo.App. 1993).

### Count XII-Agency

Plaintiff argues that Grushewsky was acting as an agent of the corporation, YCA and as an agent of each of the principals of the corporation, including Gross. As the Court's previous discussion holds, the Sales Agreement was entered into between plaintiff and Grushewsky, the owner of the airplane. There is nothing in the record which would tend to establish in any way that Grushewsky was acting as an agent in entering the Sales Agreement, particularly in light of the fact that he was indeed the registered owner of the airplane and thus was acting in his individual

capacity in selling the plane. Gross is therefore entitled to summary judgment on Count XII.

## Count XIII-Reformation

Plaintiff's attempts to change the Sales Agreement and the Promissory note to "clarify Igor Grushewsky was acting in his capacity as President of YCA when he signed both agreements" is without merit. The documents clearly set forth the parties to them and the parties' intent in entering into these agreements. Grushewsky, owner of the plane was agreeing to sell it to plaintiff. The Promissory Note clearly sets forth that Igor Grushewsky individually is agreeing to repay funds paid to him, (with the exception of the one payment for components to YCA), and it binds only Grushewsky. There is nothing in this record which would even imply that the parties to these agreements did not intend them as written. No reformation, therefore is necessary. Furthermore, a party (YCA) could not effectively agree to sell something it did not own. Likewise, YCA had not received the bulk of the funds from plaintiff and therefore it had no obligation to return them. The promissory note specifically delineates that Igor Grushewsky promises to pay plaintiff the amounts plaintiff paid. The intent of the parties and the note could not be more clear. Plaintiff's misplaced effort to obligate YCA under this Promissory Note must fail and plaintiff's further attempts to obligate Gross is an even further strained attempt to

obligate her under his alter ego theory.  As such, Count XIII against Gross is not viable.  She is therefore entitled to summary judgment on Count XIII.

## **Conclusion**

The record before the Court clearly establishes that there is a total absence of any genuine issue of material fact as to the claims against defendant Gross.  As such, defendant Gross is entitled to judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure on Counts I, IV, V, VII, VIII, IX, X, XII, and XIII of plaintiff's First Amended Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Monnye Gross' Motion for Summary Judgment, [Doc. # 57], is granted.

A separate judgment in accordance with this Memorandum and Order will be entered after the resolution of all other issues pending in this matter.

Dated this 21st day of August, 2006.

_____
   HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE